IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROXANNE COOK,

    Plaintiff,

v.                                                                                   2:20-cv-00871-LF

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Roxanne Cook's Motion to Reverse or Remand Administrative Agency Decision, with Supporting Memorandum (Doc. 22), which was fully briefed on August 19, 2021. *See* Docs. 26, 27, 28. The parties consented to my entering final judgment in this case. Docs. 4, 10, 11. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred by failing to adequately assess Ms. Cook's reported symptoms. I therefore GRANT Ms. Cook's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

    **I.**    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.   Background and Procedural History

Ms. Cook was born in 1969, has a tenth-grade education, and worked for a few years as a cashier in a gas station and at a truck stop. AR 39–42, 224, 248.[4] She filed an application for Supplemental Security Income ("SSI") on August 24, 2017, alleging disability since June 2, 2017 due to a brain injury, back problems, sleep apnea, bipolar disorder, restless leg syndrome,

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 19-1 through 19-9 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

headaches, vision problems, sciatica, and asthma. AR 224–29, 247. The Social Security Administration ("SSA") denied her claim initially on August 29, 2018. AR 155–58. The SSA denied her claim on reconsideration on March 14, 2019. AR 162–67. Ms. Cook requested a hearing before an ALJ. AR 168. On December 17, 2019, ALJ Stephen Gontis held a hearing. AR 34–75. ALJ Gontis issued an unfavorable decision on January 16, 2020. AR 14–33.

At step one, the ALJ found that Ms. Cook had not engaged in substantial, gainful activity since July 11, 2017, her application date. AR 19. At step two, the ALJ found that Ms. Cook suffered from the following severe impairments: obesity, asthma, osteoarthritis of the knees, depression, somatic symptoms disorder, personality disorder, and left temporal arteriovenous malformation ("AVM").[5] Id. At step three, the ALJ found that none of Ms. Cook's impairments, alone or in combination, met or medically equaled a Listing. AR 20–21. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Cook's RFC. AR 21–24. The ALJ found Ms. Cook had the RFC to

> perform light work as defined in 20 CFR 416.967(b) except she can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally. The claimant can never work at unprotected heights, never [sic] moving mechanical parts, in dust, odors, fumes and pulmonary irritants occasionally, in extreme cold occasionally. She is able to perform simple, routine tasks; perform simple work-related decisions; and is able to interact with coworkers, supervisors, and the public occasionally. Her time off task can be accommodated by normal breaks.

AR 21.

At step four, the ALJ concluded that Ms. Cook was unable to perform her past relevant work as a cashier. AR 25. The ALJ found Ms. Cook not disabled at step five because she could

---

[5] A brain AVM is "a tangle of abnormal blood vessels connecting arteries and veins in the brain." *Brain AVM (arteriovenous malformation)*, MAYO CLINIC, available at https://www.mayoclinic.org/diseases-conditions/brain-avm/symptoms-causes/syc-20350260 (last visited Jan. 31, 2022). Most AVMs are congenital. *Id.* "Some people with brain AVMs experience signs and symptoms, such as headache or seizures." *Id.*

4

perform jobs that exist in significant numbers in the national economy—such as assembler, garment sorter, and mail clerk.  AR 25–26.

On January 28, 2020, Ms. Cook requested review of the ALJ's unfavorable decision by the Appeals Council.  AR 221–23.  On June 24, 2020, the Appeals Council denied the request for review.  AR 1–6.  Ms. Cook timely filed her appeal to this Court on August 27, 2020. [6]  Doc. 1.

**IV.     Ms. Cook's Claims**

Ms. Cook raises four arguments for reversing and remanding this case:  (1) the ALJ failed to adequately consider symptoms from her headaches and carpal tunnel syndrome in formulating her RFC; (2) the ALJ failed to account for all of her mental limitations in formulating her RFC; (3) the ALJ failed to adequately assess her reported symptoms; and (4) the ALJ failed to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").  *See* Doc. 22.  For the reasons discussed below, I find that the ALJ failed to adequately assess Ms. Cook's reported symptoms, including her headaches, and I remand on this basis.  I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**V.      The ALJ failed to adequately assess Ms. Cook's reported symptoms.**

Ms. Cook argues that the ALJ failed to adequately assess her reported symptoms.  Doc. 22 at 9–10, 14–16.  She argues that "[a]n analysis of a claimant's subjective complaints must compare the complaints with the evidence itself, not simply list the evidence and provide a summary conclusion."  Doc. 27 at 5.  She asserts that the ALJ's decision lacks analysis because "[t]here is no analysis conducted through reciting medical records."  *Id*. at 6.  The Commissioner

---

[6] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 2.

5

responds that the ALJ gave "appropriate reasons, grounded in the record, for discounting [Ms. Cook's] symptom testimony." Doc. 26 at 10. I agree with Ms. Cook.

When evaluating a claimant's symptoms, the ALJ must use the two-step framework set forth in 20 C.F.R. § 416.929. First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 416.929(b). Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. 20 C.F.R. § 416.929(c).

"The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Under SSR 16-3p, the ALJ is required to

> explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions. [The ALJ] will evaluate an individual's symptoms considering all the evidence in his or her record.

SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017).

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

*Id*. at *10.

The ALJ completed the first step for evaluating Ms. Cook's symptoms, finding that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 22; 20 C.F.R. § 416.929(b). However, the ALJ did not adequately complete the second step for evaluating Ms. Cook's symptoms—assessing the intensity and persistence of her alleged symptoms and how these symptoms impact her ability to work. See 20 C.F.R. § 416.929(c). The ALJ neither provided a narrative discussion of the weight he gave Ms. Cook's symptoms nor "clearly articulated" his evaluation of her symptoms. See SSR 96-8p, 1996 WL 374184, at *7; SSR 16-3p, 2017 WL 5180304, at *10. The ALJ did not cite "specific reasons for the weight given to [Ms. Cook's] symptoms" or support the weight given with citations to the evidence. SSR 16-3p, 2017 WL 5180304, at *8.

Instead, the ALJ dismissed Ms. Cook's symptoms with boilerplate language: "while it is clear that the claimant suffers impairment from multiple conditions, her allegations of severity are not entirely consistent with the totality of the evidence in the record, including objective testing, treatment records and ADLs." AR 22. This is exactly the type of "conclusory statement" prohibited by the regulations. See SSR 16-3p, 2017 WL 5180304, at *8 (wholly insufficient for ALJ to merely state that "the statements about the individual's symptoms . . . are not . . . supported or consistent"). Indeed, the ALJ's opinion is devoid of any actual analysis of how her reported symptoms are inconsistent with any of the evidence. See AR 22–24 (objective summary of medical evidence with no analysis of how this evidence supports or contradicts Ms. Cook's reported symptoms or the limitations in the RFC); AR 24 (discussion of persuasiveness of medical opinions with no analysis of how this evidence supports or contradicts Ms. Cook's reported symptoms or the limitations in the RFC). The ALJ's failure to link his conclusions to the evidence in the record is a "conclusion in the guise of findings" that "fails to inform [the

Court] in a meaningful, reviewable way of the specific evidence the ALJ considered" in determining that the claimant's symptoms should not be credited. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004); SSR 16-3p, 2016 WL 1119029, at *9 ("decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms"). Because the ALJ failed to apply the correct legal standard and failed to "provide this court with a sufficient basis to determine that appropriate legal principles have been followed," remand is required. *Jensen*, 436 F.3d at 1165.

The Commissioner argues that the ALJ "cited specific records" in support of his conclusion that Ms. Cook's symptom allegations were "not entirely consistent with the totality of the evidence in the record, including objective testing, treatment records and ADLs." Doc. 26 at 9 (citing AR 22). The Commissioner, however, picks various pieces of data from the ALJ's opinion that the ALJ might have used to dismiss Ms. Cook's symptom allegations, and draws conclusions and analysis from this data that the ALJ never drew.[7] *Compare* Doc. 26 at 9–10 *with* AR 22–24. The Commissioner's argument is a post hoc rationalization that is not apparent from the ALJ's decision. It is not enough for the Commissioner to "suppl[y] some reasons that it believes would support the ALJ's RFC finding" if the "ALJ did not provide these explanations" himself. *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007). "[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the

---

[7] The Commissioner simply ignores the data in the ALJ's summary of the medical evidence that could have supported the opposite analysis or conclusions.

8

ALJ's decision itself." *Id*. at 1207–08 (citations omitted).  The Commissioner's arguments are, therefore, without merit.

The ALJ's lack of adequate analysis of Ms. Cook's symptoms is most obvious in the ALJ's treatment of Ms. Cook's headaches.  At the hearing, Ms. Cook testified that she had headaches connected to her AVM which were "worse than a migraine," occurred two to three times a day, and required her to sit in a dark, "freezing cold room" for an hour to find relief.  AR 60.  She testified that if she sensed a headache coming on, she took prescription medication (Topamax), but that after taking the medication she was "out cold."  AR 62, 70.  At the hearing, the ALJ indicated he would review the record for complaints of headaches, particularly during the period after her alleged onset date and after her AVM surgery.  AR 73.  The ALJ acknowledged at the hearing that "three of four headaches a day for an hour at a time, that's—on its own, that's disabling."  AR 74.

In his decision, the ALJ noted that Ms. Cook "continues to have severe headaches" even after gamma knife surgery for AVM.  AR 22.  The ALJ also summarized some of the medical evidence pertaining to her headaches:

> Neurology records indicate treatment for headaches, including visits in May 2017 (Ex. C1F/7, C12F).  She has reported a history of left-sided headaches, over approximately 20 years, with episodic leg weakness, and a seizure in 2010 (Ex. C8F/6).  Diagnostic studies in 2008, 2009, 2016, and 2017 indicated a large left temporal arteriovenous malformation, with no obvious rupture history on evaluation in 2017 (Ex. C4F/5, C6F).  She was evaluated for Gamma Knife radiosurgery, and underwent the procedure in January 2018 (Ex. C8F, C24F/3). In June 2018, she reported doing well following her procedure, with no neurological complaints other than headaches (Ex. C24F/6).  In July 2018, she was rechecked regarding seizures and headaches, reporting no recent seizures on Keppra, and periodic headaches, improved with marijuana (Ex. C26F/6).  In January 2019, she reported frequent headaches and a seizure three months prior, but otherwise was noted to be doing quite well (Ex. C24F/6, C26F/4).

AR 22–23.  But nowhere does the ALJ discuss Ms. Cook's reported symptoms related to her headaches.  *See* AR 21–24.  The ALJ's decision acknowledges that Ms. Cook continues to have "frequent headaches," AR 23, but offers no explanation as to why her complaints that she has headaches that occur two to three times a day and require her to sit in a dark, cold room for an hour to find relief "are not entirely consistent with the totality of the evidence in the record, including objective testing, treatment records and ADLs," AR 22.  Indeed, the RFC adopted by the ALJ does not include any limitation connected to Ms. Cook's headaches.  *See* AR 21.  The ALJ cannot reject Ms. Cook's reported headache symptoms without providing adequate discussion grounded in the evidence.

      The Commissioner provides some reasons the ALJ could have discounted Ms. Cook's symptom testimony about her headaches.  The Commissioner argues that

> As reflected in the decision, Plaintiff did not require frequent medical attention for her headaches (Tr. 22–23).  She reported a long history of headaches but, notably, they apparently did not prevent her from working in the past (Tr. 22, 25).  Further, as noted above, she described them as only "periodic" in 2018 and said that marijuana helped (Tr. 23).

Doc. 26 at 6.  The ALJ, however, did not provide these reasons to discount Ms. Cook's symptom testimony.  *See* AR 21–24.  Once again, the Commissioner's argument is a post hoc rationalization that is not apparent from the ALJ's decision.  *See Haga*, 482 F.3d at 1207 ("court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").  This argument is without merit.

      Next, the Commissioner faults Ms. Cook because she "did not cite headaches as a reason she had to stop working at her administrative hearing."  Doc. 26 at 6.  The Court fails to see the relevance of this argument.  Ms. Cook stopped working in 2017.  AR 39.  In a September 2, 2017 Headache Questionnaire, Ms. Cook reported AVM headaches that lasted 2 to 3 hours a day, for

10

which she needed to be in a dark room without sound for relief.  AR 263.  She also reported "[h]eadaches that do not go away for 2 hours" on her function report filed the same day.  AR 267.  At the ALJ hearing held on December 17, 2019, Ms. Cook testified that she had been having severe headaches several times a day for the three months prior to the hearing.  AR 60, 69.  The record evidence clearly demonstrates that Ms. Cook has suffered from headaches for many years, that she complained of headaches in 2017 (the year she stopped working), and that for the three months prior to the hearing, she had been having severe headache symptoms.  Ms. Cook's headache symptoms were squarely before the ALJ.

Finally, the Commissioner argues that "two state agency physicians reviewed the record, and both identified restrictions generally consistent with the RFC finding."  Doc. 26 at 6–7.  For this reason, the Commissioner argues that the ALJ's RFC assessment is supported by substantial evidence.  *Id*. at 7.  However, Ms. Cook does not argue about substantial evidence.  Instead, she alleges that the ALJ committed legal error by failing to adequately consider and discuss her reported symptoms.  In all cases in which symptoms are alleged, the RFC assessment must:

> * Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms . . .
>
> * Include a resolution of any inconsistencies in the evidence as a whole; and
>
> * Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.

SSR 96-8p, 1996 WL 374184, at *7.  The RFC assessed by the state agency physicians is inconsistent with Ms. Cook's reported symptoms.  *See* AR 68–69 (VE testified claimant missing 20 percent of the workday as a result of headaches would not find work in the national economy).  The ALJ did not resolve these inconsistencies.  The ALJ's decision did not

11

adequately discuss Ms. Cook's symptoms or set forth a logical explanation of how her symptoms affect her ability to work. This is legal error requiring remand.

Finally, the Court has focused primarily on Ms. Cook's headache symptoms, which are the symptoms developed most thoroughly in her briefing. However, the Court notes that the legal deficiencies in the ALJ's RFC assessment are not limited to her headache symptoms. Similar legal deficiencies permeate the ALJ's entire RFC analysis. On remand, the ALJ should thoroughly analyze Ms. Cook's symptoms, cite to "specific reasons for the weight given to [Ms. Cook's] symptoms," and support the weight given with evidence. SSR 16-3p, 2017 WL 5180304, at *8. Boilerplate language dismissing Ms. Cook's symptoms as being inconsistent with the medical evidence without any actual analysis of those symptoms is legally insufficient. The ALJ must correct this error on remand.

## VI. Conclusion

The ALJ committed legal error by failing to adequately assess Ms. Cook's alleged symptoms. The Court remands so that the ALJ can remedy this error. The Court does not reach Ms. Cook's other arguments, which "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 22) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent